HEIRS OF PEDRO PEDROZA TRÍAS, ETC., Plaintiff and Appellee, *v.* CÁNDIDA MARTÍNEZ, Defendant and Appellant.

No. 8916.   Argued May 17, 1944.—Decided July 26, 1944.

*Miguel Rodríguez Alberty* for appellant. *Armando Orraca López* for appellees:

MR. JUSTICE SNYDER delivered the opinion of the court.

This is an appeal from a judgment for the plaintiff in an unlawful detainer suit. The defendant-appellant alleges that the district court erred in not dismissing the complaint on the ground that a conflict of titles had been established by the evidence.

The plaintiff is the Estate of Pedro Pedroza Trías. The defendant is Cándida Martínez. The latter is the aunt and foster mother of Sara Pérez, who was the concubine of Pedroza for a number of years prior to the death of Pedroza. The suit herein is by the Estate of Pedroza to oust the defendant of her possession of a lot and house in which Pedroza, his mistress, and her aunt, the defendant, were admittedly residing when Pedroza died.

In her answer the defendant denies that Pedroza owned the lot and house in question. She alleges that the house "belongs to the defendant having been constructed with her own money, since she paid for all the material and labor with her own money . . . ''. The defendant also alleges that "the aforesaid lot was acquired by Pedro Luis Trías from The National City Bank, as the defendant put in the hands of Mr. Trías the amount of the purchase price on the express condition that Mr. Trías would convey the said lot to the defendant if he were not able to return the purchase price to the defendant, which he has not done in spite of the demands to that effect.''[1]

With reference to the lot, the proof of the defendant did not sustain the allegations of her answer. On the contrary, she testified merely that she made a loan to Pedroza of $132, the purchase price of the lot, which was $11 \times 12$ meters and cost $1 a meter. Other witnesses for both parties testified to the same effect. And the defendant herself filed suit in the municipal court for collection of this money, which she described simply as a loan to Pedroza. While the deed to the lot, which was introduced in evidence and which shows Pedroza as the purchaser of the lot, would not necessarily bar the defendant from showing her title thereto, she has failed to do so. The fact that the defendant loaned Pedroza the money with which to buy the lot, standing alone, cannot serve as evidence of title in her of

[1] Pedroza was known by various names, including Pedro Luis Trías.

the lot. The lower court was therefore clearly correct in holding that no conflict of titles was established by the evidence of the defendant with reference to the lot (*Noriega* v. *District Court*, 60 P.R.R. 441).

■ However, the testimony as to the house was wholly different. Sara Pérez, the mistress of Pedroza, testified that the defendant, who is her aunt and foster mother, built the house in question and took her and Pedroza to live with her in it because Pedroza was poor and could provide neither for himself nor his mistress. She testified that the defendant had likewise given Pedroza the money with which to purchase the lot. She testified—and this was corroborated by the defendant and others without challenge by the plaintiff—that the defendant had received in the past considerable sums of money from the Federal government as bonus, insurance and pension payments by virtue of the fact that her son had served in the First World War. She testified that the defendant continued to receive from this source approximately $60 a month, and that it was this money received from the Federal government which enabled the defendant both to advance the money for the lot and to construct the house thereon.

A carpenter testified on behalf of the defendant that he was the "maestro carpintero" who built the house; that the defendant paid him periodically for his work; that when materials were needed, the defendant advanced the money for them. Another carpenter testified to the same effect, adding that Pedroza sometimes went for the material, which was always paid for by the defendant.

The defendant herself testified along the same lines. She added that she gave Pedroza and the "maestro carpintero" money from time to time over a period of months, as she received it from the Federal government, to buy materials for her for the house; that if Pedroza charged any materials, he did so on his own initiative, as she simply gave

him money for materials whenever he asked for it; that she had confidence in him and left all these matters to him; that she spent about $800 in building the house; that although the tax receipt for 1941–42 showed that Pedroza had paid the said taxes of $7.46, she had given him the money to pay the same; that she has spent more money on the house since Pedroza's death; and that since Pedroza died, she personally paid the taxes on the lot and house.

While the plaintiff introduced a deed conveying the lot to Pedroza, no such document was introduced, or apparently ever existed, with reference to ownership by Pedroza of the house. The tax receipt, already adverted to, and a blueprint and construction permit, bearing the name of Pedroza as owner, were also introduced by the plaintiff. The mother of Pedroza testified that she paid the taxes of $7.46 after the latter's death, but did not have the receipt with her. The mother, brother, and foster father of Pedroza, and another carpenter who asserted that he had been the "maestro carpintero", testified that the house had been built by Pedroza, and that he had paid for the labor and bought the materials.

The plaintiff called as a rebuttal witness a merchant who testified that he had sold Pedroza materials which were used in constructing the house; that Pedroza had sometimes paid cash therefor and sometimes charged his purchases, for which he thereafter paid in cash at the rate of four or five dollars weekly.

There was also some dispute about when the defendant came to live in the house in question. She asserted she moved in, as soon as it was finished, with Pedroza and her niece. The witnesses for the plaintiff, on the other hand, testified that Pedroza first lived there a few months alone, then he brought his mistress to live with him, and thereafter the defendant came to live there the day Pedroza died.

It was uncontradicted that Pedroza left no other prop-
erty; that before he moved into the home of the defendant
a number of years ago to live there with his mistress he had
no regular occupation; that for some years thereafter he
had a small watch repair shop, which was sold for $8 or $10
when he died.

The opinion of the district court concludes as follows:

"Deciding the conflict that there might be in the proof of both
parties and weighing all the documentary evidence and oral testi-
mony, this court understands that no conflict of titles exists, be-
cause if it is true that Pedro Pedroza Trías received from the
defendant all or most of the money used for the purchase of the
lot and *construction of the house,* nevertheless the money was given
to him on such conditions, as can be gathered from the evidence
as interpreted by this court, that at the most a loan contract existed,
if not a gift, possibly in consideration of the relations between Pedro
Pedroza Trías, and the niece of the defendant." (Italics ours.)

We cannot agree with the lower court that from the testi-
mony herein summarized genuine conflicting claims as to
title to the house have not been established. "The ques-
tion is whether defendant's claim of ownership is so mani-
festly unsubstantial and untenable as not to demand serious
consideration or whether the evidence in support thereof was
sufficient to raise a legal issue. It is well settled that con-
flicting claims as to titles if bona fide can not be tried and
determined in an unlawful detainer proceeding. A flimsy
pretense will be brushed aside. An apparently bona fide
claim supported by evidence sufficient to show some color of
right, evidence sufficient to present a genuine question of
title, will justify and require a dismissal of the proceeding." [2]
We are aware that "the mere allegation of title by the de-
fendant is not sufficient, but it is necessary that he present
at least some evidence of the same",[3] and that "in the al-

[2] *P. R. Leaf Tobacco Co.* v. *Colón,* 50 P.R.R. 291, 294; to the same effect,
*Colón* v. *Colón,* 51 P.R.R. 95.

[3] *Pérez* v. *Castro,* 52 P.R.R. 263, 271.

legations and proof of defendant there should be sufficient facts to show that his pretense of title has some basis ... '' [4] But we are of the view that the proof of the defendant is sufficient to create an actual and genuine conflict of titles with reference to the house.

No written document of title exists with reference to the house. The defendant, by virtue of the service of her son in the First World War, has received thousands of dollars from the Federal government. Pedroza was penniless when he took up with the niece of the defendant. He lived with his mistress for a number of years in the home of her foster mother. It was never denied that she actually furnished the money for the lot. And while there were some intimations by his relatives that Pedroza had furnished the money from his own resources for construction of the house, there was no specific testimony to that effect, nor was any effort made to show how he could have obtained such sums of money in his own right. There was abundant testimony adduced on behalf of the defendant that she built the house as her own property with her own money, and that she had ample means herefor. In holding that· ''if it is true that Pedro Pedroza Trías received from the defendant . . . the money . . . for . . . construction of the house, nevertheless the money was given to him on such conditions . . . that at the most a loan contract existed . . . '', the district court was obviously resolving a sharp conflict in the testimony, against the defendant, on the issue of ownership of the house, which it had no authority to do in a summary proceeding of unlawful detainer.

The judgment of the district court will be reversed and a new judgment in favor of the defendant will be entered.

---

[4] *Cora* v. *Belgodere,* 55 P.R.R. 10, 13.